UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

No. 11 Civ. 2649 (RJS)
Chapter 11 Case No. 06-12737 (SMB)
Chapter 11 Case No. 06-12739 (SMB)

———————————

IN RE M. FABRIKANT & SONS, INC., *ET AL.*,

Debtors.

———————————

BUCHWALD CAPITAL ADVISORS LLC, AS TRUSTEE OF THE MFS GUC TRUST,

Appellant,

VERSUS

JP MORGAN CHASE BANK, N.A., *ET AL.*,

Appellees.

———————————

MEMORANDUM AND ORDER
September 30, 2012

———————————

RICHARD J. SULLIVAN, District Judge:

Buchwald Capital Advisors, LLC, which serves as Trustee of the MFS GUC Trust ("Appellant" or the "GUC Trust"), appeals from the January 25, 2011 Order of the Honorable Stuart M. Bernstein, Bankruptcy Judge, granting in part and denying in part the motion of the defendant banks[1] (collectively, "Appellees" or the "Banks") to dismiss Appellant's Third Amended Complaint in its adversary proceeding. For the reasons set forth below, the Court affirms the Bankruptcy Court's Order in its entirety.

I. BACKGROUND

Debtors M. Fabrikant & Sons ("MFS") and Fabrikant-Leer International ("FLI")

---

[1] Appellees are JP Morgan Chase Bank, N.A. ("JPMC"); ABN AMRO Bank N.V. ("ABN"); Bank of America, N.A.; HSBC Bank, National Association ("HSBC"); Bank Leumi USA ("Bank Leumi"); Israel Discount Bank of New York ("IDB"); Antwerpse Diamantbank, N.V. ("ADB"); Sovereign Precious Metals LLC ("SPM"); and Sovereign Bank ("Sovereign").

(collectively, "Debtors") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 17, 2006. Both debtors are jewelry companies owned or controlled by members of the Fortgang family. *In re M. Fabrikant & Sons, Inc.* ("*Fabrikant III*"), 447 B.R. 170, 176-77 (Bankr. S.D.N.Y. 2011). In 2007, the unsecured creditors' committee, succeeded by Appellant pursuant to the Plan of Liquidation, filed suit against the Banks, secured creditors of the Debtors, alleging fraudulent conveyance. Specifically, Appellant alleges that the Banks participated in a scheme whereby they made secured loans to Debtors, knowing that the proceeds of the loans would subsequently be fraudulently transferred to several companies (collectively, the "Affiliates") that were owned or controlled by members of the Fortgang family but which, for the most part, did not own and were not owned by the Debtors. Additionally, Appellant seeks recovery of funds that it alleges MFS fraudulently transferred to various Affiliates and were subsequently reconveyed to certain Banks. Finally, Appellant seeks recovery of alleged preferential payments made to the Banks within ninety days of the petition date. (*See generally* Third Amended Complaint ("TAC")).

On October 10, 2008, the Bankruptcy Court granted in part and denied in part the Banks' motion to dismiss the Amended Complaint. *In re M. Fabrikant & Sons, Inc.* ("*Fabrikant I*"), 394 B.R. 721 (Bankr. S.D.N.Y. 2008). Thereafter, Appellant filed a Second Amended Complaint, which the Bankruptcy Court again dismissed in part. *In re M. Fabrikant & Sons, Inc.* ("*Fabrikant II*"), No. 06-12737 (SMB), 2009 WL 3806683 (Bankr. S.D.N.Y. Nov. 10, 2009). Appellants then filed their TAC. Once again, the Bankruptcy Court dismissed the TAC in part. *Fabrikant III*, 447 B.R. 170. Appellant appealed from *Fabrikant III* on April 19, 2011 and filed its brief on May 31, 2011. The appeal was fully submitted as of August 3, 2011.

## II. LEGAL STANDARDS

District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a)(1). Specifically, "Congress intended to allow for immediate appeal in bankruptcy cases of orders that finally dispose of discrete disputes within the larger case." *In re Fugazy Exp., Inc.*, 982 F.2d 769, 775 (2d Cir. 1992) (internal quotation marks omitted). Where, as here, a bankruptcy court has dismissed a complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court reviews the bankruptcy court's conclusions of law *de novo*. *In re Bennett Funding Grp.*, 146 F.3d 136, 138 (2d Cir. 1998).

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to survive a motion to dismiss, a complaint must "provide the grounds upon which his claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Plaintiffs must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conversely, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 570. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to

plausible, [his] complaint must be dismissed." *Id.* In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98.

However, all averments of fraud must be "state[d] with particularity." Fed. R. Civ. P. 9(b). Thus, to comply with the heightened pleading standard of Rule 9(b), a plaintiff must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). Additionally, although Rule 9(b) relaxes the specificity requirement for scienter, that "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (internal quotations and citations omitted). A complaint still must "allege facts that give rise to a strong inference of fraudulent intent." *Id.*

### III. DISCUSSION

The GUC Trust appeals the Bankruptcy Court's dismissal of: (1) Counts I-IV (the "'Collapsing' Fraudulent Conveyance Claims"); (2) Counts VIII-X (the "Subsequent Fraudulent Conveyance Claims") with respect to their claims of *intentional* fraudulent conveyance; (3) Count XI (the "Preference Claims"); and (4) Count XII (the "Disallowance Claim") of the TAC. The Court addresses each in turn.

### A. Counts I-IV: "Collapsing" Fraudulent Conveyance Claims

Counts I-IV of the TAC allege that, beginning in 2003, the Banks knowingly made numerous secured loans to Debtors, and Debtors subsequently reconveyed the proceeds of those loans to the Affiliates for less than reasonably equivalent value. According to Appellant, Debtors' dealings with the Banks and the Affiliates should be collapsed and viewed as a single transaction. And, because Debtors did not retain the loan proceeds, Appellants contend that the conveyance of liens from Debtors to the Banks was a fraudulent transfer, in violation of 11 U.S.C. §§ 544, 548, and New York law.[2]

### 1. Applicable Law

Pursuant to 11 U.S.C. § 548, a transfer made or obligation incurred within two years of the petition date may be avoided as intentionally or actually fraudulent if it was made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A). Alternatively, a transfer is constructively fraudulent if the debtor "received less than a reasonably equivalent value in exchange for such transfer or

---

[2] Specifically, Count I seeks to avoid obligations incurred by the Debtors to the Banks from January 2003 to the petition date pursuant to 11 U.S.C. § 544 and N.Y. D.C.L. § 276; Count II seeks to avoid obligations incurred by FLI from January 2005 to the petition date, pursuant to 11 U.S.C. § 548; Count III seeks to avoid obligations incurred by MFS from January 2005 to the petition date, pursuant to 11 U.S.C. § 548; and Count IV seeks to avoid the security interests and liens that secured all of those obligations from October 2004 until the Banks sold their claims, pursuant to 11 U.S.C. §§ 544, 548, and 550.

3

obligation; and was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation." *Id.* § 548(a)(1)(B).[3]

Similarly, under New York Debtor and Creditor Law section 276, a conveyance made or obligation incurred "with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors" is fraudulent; under section 273, a conveyance or obligation is "fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."[4]

In this case, because the amount of the loans that Debtors received is roughly equivalent to the value of the liens that they gave the Banks in return, there is no allegation that these transactions were, standing alone, fraudulent conveyances. (Appellant Br. 15.) However, Appellant argues that when the transactions between the Banks and Debtors and the transactions between Debtors and the Affiliates are collapsed, the liens given to the Banks are fraudulent conveyances. (*Id.*) In order to collapse two transactions and treat them as a single transaction under fraudulent conveyance law, a plaintiff must establish that: (1) a party gave the debtor fair value in exchange for the debtor's property, but the debtor then gratuitously reconveyed what it received to a third party, taking nothing in return; and (2) the party to the transaction with the debtor that is sought to be avoided, "must have [had] actual or constructive knowledge of the entire scheme that renders [its] exchange with the debtor fraudulent." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635 (2d Cir. 1995). The Court proceeds to consider whether the Bankruptcy Court correctly concluded that Appellant failed to plead either required element.

2. Whether the Trustee Adequately Pleaded That the Loans Were Reconveyed

On appeal, Appellant argues that the TAC contains sufficient factual allegations to collapse the transactions and that the Bankruptcy Court improperly drew inferences in favor of the Banks, rather than GUC Trust, when it held otherwise. (Appellant's Br. 20-21 & n.14.) Specifically, the Trustee takes issue with the Bankruptcy Court's focus on the TAC's failure to allege specific pairings of transactions between the Banks and Debtors on the one hand, and Debtors and the Affiliates on the other. (*Id.* at 19.)

In order to bring a collapsing fraudulent conveyance claim, a plaintiff must identify a set of transfers that can be said to constitute a unified scheme to defraud creditors of the debtor. *HBE Leasing*, 48 F.3d at 635; *see Orr v. Kinderhill Corp.*, 991 F.2d 31, 35-36 (2d Cir. 1993). The question, then, is whether a series of transactions amounted to a "single, integrated transaction," where the debtor was in effect an intermediary who made a "gratuitous transfer" to a third party of the value it had received. *Orr*, 991 F.2d at 35-36. Following the Second Circuit's instructions, the Bankruptcy Court in *Fabrikant II* identified what it viewed as the "fundamental flaw" in the Trustee's legal theory: namely, that the Trustee sought to

---

[3] Similarly, a transfer for less than reasonably equivalent value is constructively fraudulent if the debtor: " was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or] intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured." 11 U.S.C. § 548(a)(1)(B)(ii)(II)-(III).

[4] Section 544(b) of the Bankruptcy Code provides a cause of action to avoid transfers that are fraudulent under applicable state law.

4

recover the "unpaid balance of all loans" that had been extended by the Banks rather than an amount based on an aggregation of the specific transfers it alleged were fraudulent. *Fabrikant III*, 447 B.R. at 184. According to the Bankruptcy Court, "[i]t was implausible to contend that every transfer from the debtors to the . . . Affiliates was fraudulent" because, among other reasons, it appeared from the pleadings that Debtors actually owed the Affiliates money and, therefore, engaged in various clearly legitimate transactions. *Id*. Thus, in *Fabrikant II*, the Bankruptcy Court granted the Trustee leave to amend and directed the Trustee to identify specific transfers that might be properly "collapsed" upon repleading. *Id.* at 185.

Nevertheless, Appellant failed to comply with this directive and, in *Fabrikant III*, Judge Bernstein again found that the TAC failed to "allege that a particular Lending Bank made a specific advance that was subsequently reconveyed fraudulently with that Lending Bank's knowledge or consent." *Id.* at 191. The Bankruptcy Court concluded that, by not pleading pairs of loans made by the Banks to Debtors with conveyances from Debtors to the Affiliates, the TAC did not allege any transfers that were part of a single scheme.[5] *Id*. at 191. The Court agrees.

Rather than identify pairs of transactions that actually amounted to integrated, fraudulent transfers – as case law requires and the Bankruptcy Court clearly directed – Appellant merely asserts that the transactions between the Banks and the Debtors, in the aggregate, resulted in a net loss to Debtors. (*See, e.g.*, TAC ¶¶ 44, 58-59.) Clearly, more is required to state a collapsing fraudulent conveyance claim. As the Bankruptcy Court recognized, the Trustee's "net transfer theory only makes sense when all of the transfers are presumptively fraudulent, as in the case of a Ponzi scheme." *Fabrikant II*, 2009 WL 3806683, at *13 n.19 (citation omitted). However, the Trustee "does not state or imply that Fabrikant was run as a Ponzi scheme." *Id.*

In essence, Appellant alleges that the TAC states a claim because the Debtors reconveyed *some* portion of the loan proceeds that they received from the Banks to the Affiliates without receiving anything in return. (Appellant Br. 19; *e.g.*, TAC ¶¶ 6, 75.) While Appellant need not show a perfectly matched flow of consideration from the Banks to the Affiliates via Debtors – *i.e*, a five-million-dollar loan from the Banks to Debtors and a five-million-dollar transfer from Debtors to the Affiliates, without receiving value in return – Appellant nonetheless must identify specific transactions in which some portion of loan proceeds that Debtors received were gratuitously reconveyed to Affiliates as part of a single transaction. *See HBE Leasing*, 48 F.3d at 635. For largely the reasons explained in *Fabricant III*, Appellants have failed to do so. *See Fabricant III*, 447 B.R. at 189-93.

Nevertheless, Appellant asserts that the claims should proceed because resolving the particular loans made by the Banks that were improperly reconveyed to the Affiliates can be done on the merits following discovery. (Appellant Br. 27.) However, while Appellant is correct that *Twombly* did not impose a "probability requirement" and requires only that a claim be plausible, the allegations in the TAC do not *plausibly* establish that loans from the Banks were reconveyed to Affiliates as part

---

[5] Judge Bernstein noted that the Trustee represented at oral argument that the transactions listed in paragraph 61 of the TAC did not involve loans to Affiliates that were the subject of the scheme; accordingly, the Court disregards this paragraph, as Appellants requested.

of a single transaction. Because the TAC does not match any loans, from the Banks to Debtors, to transfers, from Debtors to the Affiliates, the TAC offers only conclusions without factual support that these transactions should be collapsed.

Moreover, the implausibility of Appellant's assertion that these transactions should be collapsed is all the more apparent in view of the fact that the TAC states, and Appellant concedes in its brief, that "some portion of [the Banks'] loans were used for the legitimate purchase and sale of jewelry or other corporate activities." (Appellant Br. at 19; *see* TAC ¶¶ 45.) For those transfers from Debtors to the Affiliates that were supported by consideration, there is no basis for finding that the liens given by Debtors to the Banks should be avoided as fraudulent conveyances. *See* 11 U.S.C. § 548(a); *In re NextWave Personal Commc'ns, Inc.*, 200 F.3d 43, 56 (2d Cir. 1999) ("Under the avoidance provisions of the [Bankruptcy] Code, a transfer or obligation is or is deemed to be a fraudulent conveyance – and therefore avoidable – if the debtor received less than a reasonably equivalent value in exchange for such transfer or obligation." (citation and internal quotation marks omitted)); *In re Old CarCo LLC*, No. (DLC), 2011 WL 5865193, at *7 (S.D.N.Y. Nov. 22, 2011). By acknowledging that at least some of the transfers from Debtors to the Affiliates were in fact for reasonably equivalent value, the TAC essentially undercuts the notion that the transactions at issue constituted a unified scheme to defraud Debtors' creditors.

Accordingly, because the TAC does not allege that any particular loans from the Banks were gratuitously reconveyed to the Affiliates, the Court finds that the facts alleged in the TAC do not plausibly suggest that these transactions should be collapsed, and the Bankruptcy Court properly dismissed the "Collapsing" Fraudulent Transfer Claims.

3. Whether the Banks had Knowledge

The "Collapsing" Fraudulent Conveyance Claims additionally fail because the TAC does not provide factual support for the contention that the Banks were *actually* or *constructively* aware that Debtors would reconvey the loan proceeds to the Affiliates for less than reasonably equivalent value. *See HBE Leasing*, 48 F.3d at 635.

First, the TAC offers no facts to support the claim that the Banks had actual knowledge beyond the wholly conclusory assertion that the Banks were "intimately involved in the formulation or implementation of the plan by which the proceeds of the loan were channeled to the third-party," *In re Sunbeam Corp.*, 284 B.R. 355, 370 (Bankr. S.D.N.Y. 2002); (TAC ¶ 79), or that the Banks otherwise had actual knowledge of the alleged fraudulent scheme. Such a "formulaic recitation" of the elements of the cause of a fraudulent conveyance claim will not suffice to meet the federal pleading standard. *See Twombly*, 550 U.S. at 570.

Similarly, the TAC also fails to allege that the Banks had constructive knowledge of the alleged scheme. In determining whether constructive notice has been established, courts have looked to "red flags" that should have put the grantee on notice of potential fraud. *In re Bayou Grp., LLC*, 439 B.R. 284, 314 (S.D.N.Y. 2010). However, signals of general "infirmities" in a company, which could merely reflect "a poor business model, incompetent management, . . . insufficient capital, and a host of other deficiencies" other than fraud, are inadequate to trigger inquiry notice. *Id*. The TAC alleges that, as a general matter,

the Banks were aware of the Debtors' finances, the volume of their transactions with the Affiliates, and that the Affiliates were, by and large, unrelated to Debtors. (TAC ¶¶ 79, 80-83, 85-87, 89, 118-119.) The TAC also alleges that transfers to the Affiliates were poorly documented and inconsistent with "standard business practices," with ledger entries often not showing maturity dates or collateral provided to secure advances. (*Id.* ¶¶ 45-46, 54-55, 60.) Additionally, the TAC alleges that the Banks treated accounts receivable from the Affiliates differently from Debtors' other assets. (*See id.* ¶¶ 96, 98-101 (noting that various bank documents excluded accounts receivable from the Affiliates when determining the Debtors' "borrowing base" and represented that a large portion of those accounts were overdue).) In particular, the TAC alleges that Bank of America noted in 2005 that MFS had high leverage and marginal profitability relative to sales and that its accounts receivable collateral was "poor." (*Id.* ¶¶ 94, 102.) In 2004, ABN "identified a negative borrowing base between $3 and $16.6 million." (*Id.* ¶ 94.)

However, although these allegations could conceivably raise some doubts as to Debtors' financial stability, they hardly rise to the level of suggesting fraud. Indeed, the facts alleged in the TAC actually undermine the suggestion that the Banks knew or should have known that their loans would be funneled to the Affiliates while providing no benefit to Debtors. For example, the attachments to the TAC show large payments coming to Debtors from the Affiliates, some of which appear to far exceed the amount being transferred from Debtors to the Affiliates. (TAC Ex. C.) Moreover, as the Bankruptcy Court noted, a 2002 report produced by JPMC, and referenced in the TAC, revealed that MFS owed the Affiliates far more than the Affiliates owed MFS. *Fabrikant III*, 447 B.R. at 183; (*see* TAC ¶¶ 96-97). Thus, it is far from obvious that the flow of cash from Debtors to the Affiliates should have alerted the Banks to the likelihood that Debtors were not benefiting from the loans or even that their relationship with the Affiliates was a net negative.

Moreover, Appellant's contention – that the Banks were aware of, but indifferent to, the fact that all of the Fortgang companies were simultaneously insolvent and simply shuffling money around to meet short-term obligations – requires an inference that is highly implausible, bordering on the absurd. In essence, Appellant alleges that the Banks took the massive risk of continuing their lending relationships with the Fortgang companies (*id.* ¶¶ 109-114) on the speculative hope that "there may be sufficient liquidity in the 'Fabrikant Empire' . . . as a whole to enable the Banks to obtain repayment" through personal guarantees and "other pressure" (*id.* ¶¶ 78, 108, 122-123). Such an assertion would be nonsensical if the Banks were in fact aware that Debtors and the Affiliates had to use the same dollars to repay separate obligations. Put simply, drawing all inferences in favor of Appellant, it is difficult to see what benefit the Banks could hope to obtain by lending ever-larger amounts of money to failing companies. The TAC's wholly conclusory allegations that the Banks were "[c]louded in judgment due to lavish commissions" (*id.* ¶ 78) is equally implausible, since the loss of principal would have far outweighed the commissions earned on the loans, *cf., e.g.*, *Pungitore v. Barbera*, No. 11 Civ. 6249 (VB), 2012 WL 2866293, at *4 (S.D.N.Y. Mar. 29, 2012) (declining to draw implausible inference proffered by plaintiff and instead dismissing claims based on far more plausible inference drawn from the facts alleged in the complaint).

7

Considering the TAC in its entirety, the Court has little difficulty concluding that Appellants have failed to allege constructive knowledge on the part of the Banks. Instead, the far more plausible inference is that the Banks were confident that Debtors could continue operating based on the overall strength of the Fortgang companies. Consistent with this inference, Bank Leumi's note in 2002 that a weak Affiliate might nonetheless be creditworthy because it was "'under the umbrella' of the M. Fabrikant Group" (TAC ¶ 106), suggests not a nefarious ploy, but confidence – however misguided – that the companies continued to be creditworthy. Likewise, that SPM believed MFS to be creditworthy based on MFS's "demonstrated liquidity" (*id.* ¶ 111) – an apparent reference to its year-end "cleanup" payments on its open lines of credit – makes no sense if SPM understood that MFS repaid its loans by means of an elaborate shell game. In short, the TAC fails to allege plausibly that the Banks were even aware of the alleged scheme as a *general* matter, much less that they were aware either that any particular advance would be fraudulently conveyed or that the scheme was so pervasive that fraudulent reconveyance was likely.

Moreover, the TAC alleges that as of 2006 – the year when Debtors filed their bankruptcy petitions – the Banks believed that they had extended too many loans to Debtors and that intercompany lending was problematic. (*Id.* ¶¶ 94, 104.) That these communications were in connection with "the debtors' attempts to maintain [their] credit facility" (*id.*) suggests that the Banks realized *at that time*, and not before, that the Debtors might be insolvent.

Additionally, even if the allegations were sufficient with respect to *some* of the Banks, Appellant repeatedly conflates all of the Banks in the TAC, such as where it alleges that the loans "funded fraudulent transfers to the . . . Affiliates of which the Banks were themselves creditors" – even though only four of the banks had lending relationships with the Affiliates – and that "the Banks" relied on liquidity in the "Fabrikant Empire" as a whole for repayment. (*Id.* ¶¶ 120, 122-123, 126.) Appellant's tenuous theory as to the Banks' motive as a group is even more implausible with regard to the Banks that have no alleged relationship with the Affiliates and, thus, apparently were participating in a scheme to defraud themselves based on Appellant's assertions. Appellant has utterly failed to plead a plausible cause of action against *each* Bank, relying instead on sweeping and conclusory allegations that the lenders "operated as a single syndicate of lenders." (*Id.* ¶ 91.)

Accordingly, the Court finds that the TAC fails to plausibly allege that the Banks were aware, actually or constructively, that Debtors would reconvey the loan proceeds to the Affiliates for less than reasonably equivalent value. Therefore, the Court affirms the Bankruptcy Court's dismissal with prejudice of Counts I through IV because the TAC does not plausibly allege either required element of a collapsible fraudulent conveyance.

### B.  Counts VIII-X: Subsequent Fraudulent Transfer Claims

Counts VIII, IX, and X allege that MFS transferred funds to the Affiliates for less than reasonably equivalent value and that the Affiliates reconveyed those funds to ABN, IDB, HSBC, and Sovereign.

As noted above, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a party alleging fraud must "state with particularity the circumstances constituting fraud." "Since '[i]t is a serious matter to charge a

8

person with fraud,' a plaintiff is not permitted to do so 'unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically.'" *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002) (quoting *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972)). Accordingly, in order to adequately allege intentional fraudulent conveyance consistent with Rule 9(b), a complaint must specify "the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration paid." *Id.*; *see also Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04 Civ. 4971 (NG) (MDG), 2006 WL 2802092, at *9 (E.D.N.Y. Sept. 28, 2006) (dismissing claims of intentional fraudulent conveyance where complaint did "not identify how many transfers plaintiff is challenging or the specific dates and amounts of those transfers" and instead "aggregate[d] the transfers into lump sums over three to five year time periods").

Appellant asserts that Debtors' payments to several different entities over the course of nearly a year, or two years with respect to Affiliate VSI, LLC, constitute "granular detail" sufficient to satisfy Rule 9(b)'s pleading standard. (Appellant Br. 31.) However, the sole case that they cite for the proposition that individual payments need not be identified, *S.E.C. v. Feminella*, 947 F. Supp. 722, 732-33 (S.D.N.Y. 1996), arose in the securities context and appears inconsistent with more recent precedent applicable to fraudulent conveyance claims, *see, e.g.*, *United Feature Syndicate*, 216 F. Supp. 2d at 221 (dismissing fraudulent conveyance claim under Rule 9(b) that did "not specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, or the consideration paid"). Thus, the Court agrees with the Bankruptcy Court that Appellant's failure to identify in the TAC the dates and amounts of particular transfers alleged to be fraudulent is fatal to any claim for intentional fraudulent conveyance. Accordingly, the Court affirms the Bankruptcy Court's dismissal of Counts VIII, IX, and X with prejudice.

### C. Count XI:  Preference Claims

Count XI seeks recovery of numerous transfers made by Debtors to the Banks within ninety days of the filing of its bankruptcy petition. The Bankruptcy Court, relying primarily on its opinion in *Fabrikant II*, determined, first, that Appellant lacked standing to raise the Preference Claims, and, further, that, even if Appellant had standing, the Preference Claims were untimely.

The Court agrees that the Preference Claims were untimely. Pursuant to the Bankruptcy Court's Final Order Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection Claim and Lien (the "Final Cash Collateral Order" or "FCCO"), the deadline for filing avoidance claims was October 1, 2007. Notwithstanding that firm deadline, Appellant failed to assert the Preference Claims until it filed its Second Amended Complaint on December 1, 2008 – more than a year after the deadline. *Fabrikant III*, 447 B.R. at 181.

Appellant argues that the FCCO merely prevented the GUC Trust from initiating *new* adversary proceedings after the deadline. (Appellant's Br. 34-35.) Appellant further argues that "[t]he preferential payments made by the Debtors were among these precise transfers that the Trustee originally sought recovery of on fraudulent conveyance grounds" in the first complaint and, therefore, the claims relate back to the filing date of the original

Complaint pursuant to Federal Rule of Civil Procedure 15. (*Id.* at 35.)

The FCCO provides in relevant part that the Creditors' Committee (Appellant's predecessor in interest) had until October 1, 2007 "to commence an adversary proceeding against any of the Lender Parties for the purpose" of, *inter alia*, filing avoidance claims.[6] (No. 07-2780 (SMB), Doc. No. 16-2, ¶ 22.) The FCCO further provides that "[t]he Committee shall be barred forever from commencing a Challenge if the Committee has failed to do so within such stated time period." (*Id.*) Although it is true that Appellant filed *an* adversary proceeding against Appellees within the stated time period, the Court does not read the FCCO to mean that Appellant's filing of *any* complaint against Appellees before the deadline opened the door to later amendments to bring in wholly separate claims. Instead, the most logical reading of the FCCO is that no *new* avoidance claims can be raised after October 1, 2007. Holding otherwise would be inconsistent with the rule that, in avoidance litigation, each transfer is treated as a separate transaction for purposes of applying the "relation back" doctrine. *See In re 360networks (USA) Inc.*, 367 B.R. 428, 434 (Bankr. S.D.N.Y. 2007) ("[A] preference action based on one transfer does not put defendant on notice of claims with respect to any other unidentified transfers.").

Of course, a time-barred claim may be raised in an amendment and related back to the date of the timely complaint if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In order for an amendment to relate back to an earlier pleading, that earlier pleading must have "put the defendants . . . on notice of what must be defended against in the amended pleadings." *Barr v. Charterhouse Grp. Int'l, Inc.*, 238 B.R. 558, 573–74 (S.D.N.Y. 1999) (citations omitted); *see also Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 333-34 (S.D.N.Y. 2009). Additional legal theories may be added later, but the earlier pleading "must inform the defendants of the facts that support those new claims." *Barr*, 238 B.R. at 574. Although a plaintiff need not set forth "an intricately detailed description of the asserted basis for relief, . . . the pleadings [must] 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, an amendment will relate back if the transactions arose from the same course of business and involve the same evidence, even if new legal theories are asserted. *White v. White Rose Food*, 128 F.3d 110, 116 (2d Cir. 1997); *see also In re Global Crossing, Ltd.*, 385 B.R. 52, 65 n.16 (Bankr. S.D.N.Y. 2008) (finding that fraudulent conveyance claim related back to preference claim where both involved "claims under section 550 to recover the $20 million paid just before the Debtors' bankruptcy filing, at a time when [the debtor] was allegedly insolvent" and, therefore, arose out of the same "transaction or occurrence"). On the other hand, if the transaction is different in kind from those originally alleged, or if new facts and transactions are alleged, the new

---

[6] Specifically, the FCCO provides that the Committee may file such suits "through and until the earlier of the one hundred and twentieth (120th) day following the date on which notice of its appointment is filed by the U.S. Trustee (or the first business day thereafter if such day is not a business day)." (No. 07-2780 (SMB), Doc. No. 16-2, ¶ 22.) The parties do not appear to disagree that such date is October 1, 2007. (*See* Appellants' Br. 35.)

10

allegation does not relate back. *In re Metzeler*, 66 B.R. 977, 983 (S.D.N.Y. 1986).

Moreover, the law is clear that each preferential and fraudulent transaction is treated separately and distinctly. *Id.* at 984; *see also 360networks*, 367 B.R. at 424. Proof offered for one transaction does not govern as to another and, as such, relation back cannot be ordered between different transactions merely for being similar or arising from the same conduct. *Metzeler*, 66 B.R. at 984. The "mere allegation" that all of the transactions are fraudulent does not make them part of the same conduct. *Id.* at 983.

In the instant case, the original Complaint alleges only that "[f]rom October 2004 until it sold its claim, the defendants received liens and security interests and *proceeds thereof* from Fabrikant to secure the fraudulent obligations previously alleged." (Compl. ¶ 71 (emphasis added).) Plaintiff does not identify any other reference within the original Complaint to transfers from Debtors to the Banks that could encompass the Preference Claims. (Appellant's Br. 35.)[7]

The general allegation that transfers from October 2004 until Appellees sold their claims were fraudulent fails to identify any particular objectionable transactions. Overly general original pleadings do not provide defendants with adequate notice as to what facts they are to defend against, and, therefore, such general allegations cannot be hooks on which to hang later amended pleadings. *See, e.g.*, *Fair Hous. in Huntington Comm. v. Town of Huntingtown*, No. 02-CV-2787 (DRH), 2010 WL 2730757, at *7 (E.D.N.Y. July 8, 2010) (finding that the original Complaint's general reference to the town's "ongoing exclusionary housing practices" was insufficient to place defendants on notice for all future alleged discriminatory acts with regard to housing within the town).

Although "Rule 15(c) [is] to be liberally construed, particularly where an amendment does not allege a new cause of action but merely . . . make[s] defective allegations more definite and precise," *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983) (quotation marks and citation omitted), the TAC does not provide more specificity to cure a defective allegation; rather, it alleges a new cause of action and reaches for a general hook to hang it on. Accordingly, the Preference Claims do not relate back to the original Complaint – the only timely pleading – and thus were properly dismissed by the Bankruptcy Court.

Because the Court affirms dismissal of Count XI on timeliness grounds, the Court need not consider the Bankruptcy's determination that Appellant lacked standing to raise the Preference Claims.

A. Count XII: Disallowance Claim

Count XII of the TAC seeks disallowance of Appellees' claims based on the allegations of fraudulent conveyances and preferences. Accordingly, Count XII rises and falls with the above-discussed claims. (Appellant Br. 36.) The Bankruptcy Court dismissed Count XII as against JPMC, Bank of America, HSBC, Bank Leumi, and ADB with prejudice; however, it dismissed the claim as against Sovereign and SPM, with leave to replead based on its dismissal

---

[7] The Complaint also alleges that on January 13, 2006, FLI guaranteed MFS's debt, and, on July 7, 2006, the Debtors incurred an obligation to Sovereign on account of MFS's purchase of gold. (Compl. ¶¶ 34-39.) However, neither of these transactions took place within ninety days of Debtors' bankruptcy petition, and, therefore, those allegations could not have put the Banks on notice of possible Preference Claims.

11

without prejudice of Count VII, and denied the motion as to ABN and IDB. *Fabrikant III*, at 196-97.

Because the Court has affirmed the Bankruptcy Court's rulings on the fraudulent conveyance and Preference Claims, the Court also affirms the Bankruptcy Court's dismissal with prejudice of Count XII as to JPMC, Bank of America, HSBC, Bank Leumi, and ADB.

## IV. CONCLUSION

For the foregoing reasons, the Court affirms the Bankruptcy Court's January 25, 2011 order granting in part and denying in part the Banks' motion to dismiss the TAC. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

---
RICHARD J. SULLIVAN
United States District Judge

Dated: September 30, 2012
       New York, New York

Debtor is represented by Lindsey Godfrey of Susman Godfrey LLP, 1201 Third Avenue, Suite 3800, Seattle, WA 98101.

Appellant is represented by Arun Srinivas Subramanian of Susman Godfrey LLP, 654 Madison Avenue, New York, NY 10065, and Johnathan Jeffrey Ross of Susman Godfrey LLP, 1000 Louisiana Street, Suite 5100, Houston, TX 77002.

Appellee JP Morgan Chase Bank, N.A. is represented by Steven J. Mandelsberg of Hahn & Hessen LLP, 488 Madison Avenue, Suite/Floor 15, New York, NY 10022.

Appellee ABN AMRO Bank N.V. is represented by Ingrid Bagby of Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, NY 10281.

Appellee Bank of America, N.A. is represented by Paul S. Samson of Reimer & Braunstein LLP, Three Center Plaza, 6th Floor, Boston, MA 02108.

Appellee HSBC Bank USA, National Association, is represented by William J. Brown of Phillips Lytle LLP, 437 Madison Avenue, New York, NY 10022.

Appellee Bank Leumi is represented by Andrew C. Gold of Herrick, Feinstein, 2 Park Ave., New York, NY 10016.

Appellee Israel Discount Bank of New York is represented by Russell Lowell Reid of Sheppard Mullin Richter & Hampton, 30 Rockefeller Plaza, 24th Floor, New York, NY 10112.

Appellee Antwerpse Diamantbank, N.V. is represented by Matthew Roseman of Cullen and Dykman, LLP, 100 Quentin Roosevelt Boulevard, Garden City, NY 11530-4850.

Appellees Sovereign Precious Metals, LLC and Sovereign Bank are represented by Michael T. Conway of LeClairRyan, 830 Third Avenue, Fifth Floor, New York, NY 10022.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/2012